*In re* ROBINSON

Docket No. 109650. Submitted March 14, 1989, at Lansing. Decided June 15, 1989.

Deyonta Robinson, a minor, was convicted of first-degree felony murder in the Muskegon County Probate Court, Tom H. Linck, J. He appealed, alleging that he should have been granted specific performance of a plea agreement, that photographs of the victim's body should not have been admitted, that the court should have given a specific-intent instruction with the instructions on felony murder and second-degree murder, and that the jury's verdict was against the great weight of the evidence.

The Court of Appeals *held:*

1. The evidence showed a plea offer by the prosecutor which was never accepted and was withdrawn while the parties were still negotiating. The evidence revealed no prosecutorial abuse of discretion and no plea agreement.

2. The objected-to photographs were offered to show malice and their prejudicial effect did not outweigh their probative value. The court did not abuse its discretion in admitting them.

3. The court did not err in failing to give a specific-intent instruction. The specific intent to kill is not an element of either first-degree felony murder or second-degree murder.

4. The question of whether a conviction is against the great weight of the evidence generally involves issues of the credibility of witnesses or circumstantial evidence. The Court of Appeals, in reviewing this issue on appeal, looks to whether there was an abuse of discretion by the trial court in denying a motion for a new trial rather than resolving credibility issues anew. The court did not abuse its discretion.

Affirmed.

REFERENCES

Am Jur 2d, Criminal Law §§ 481, 488; Evidence §§ 786, 787, 789, 790.

Right of prosecutor to withdraw from plea bargain prior to entry of plea. 16 ALR4th 1089.

Admissibility of photograph of corpse in prosecution for homicide or civil action causing death. 73 ALR2d 769.

1. INFANTS — PROBATE COURTS — JUVENILE PROCEEDINGS — PLEA IN CONFESSION — INCLUDED OFFENSES.

A probate court may not accept from a juvenile charged with an act constituting a felony a plea in confession to a lesser included offense to the prosecution's charged offense without first securing the prosecution's concurrence to such a plea.

2. CRIMINAL LAW — PLEA BARGAINS — REINSTATEMENT OF PLEA AGREEMENT.

A trial court may not reinstate a plea bargain from which the prosecutor has withdrawn unless the prosecutor's withdrawal was an abuse of discretion or a defendant was prejudiced.

3. EVIDENCE — APPEAL.

The admission or exclusion of evidence rests in the sound discretion of the trial judge, and the judge's exercise of discretion will not be overturned on appeal absent a showing of clear abuse of such discretion.

4. EVIDENCE — PHOTOGRAPHS — FOUNDATION FOR ADMITTING PHOTOGRAPHS.

Proper foundation for the admission of photographs is made if someone who is familiar from personal observation of the scene or person photographed testifies that the photograph is an accurate representation of the scene or person; photographs are admissible despite changes in the condition of the scene or person where a person testifies as to the extent of the changes.

5. HOMICIDE — FELONY MURDER — INTENT.

The specific intent to kill is not an element of first-degree felony murder (MCL 750.316; MSA 28.548).

6. HOMICIDE — SECOND-DEGREE MURDER — INTENT.

Second-degree murder is not a specific-intent crime.

7. CRIMINAL LAW — EVIDENCE — APPEAL.

The question of whether a conviction is against the great weight of the evidence generally involves issues of the credibility of witnesses or circumstantial evidence; the Court of Appeals, in reviewing this issue on appeal, looks to whether there was an abuse of discretion by the trial court in denying a motion for a new trial rather than resolving credibility issues anew.

*Tony Tague,* Prosecuting Attorney, and *Linda S. Kaare,* Assistant Prosecuting Attorney, for the people.

*David W. Marra,* for defendant.

Before: DOCTOROFF, P.J., and MAHER and MARILYN KELLY, JJ.

PER CURIAM. Deyonta Robinson, a juvenile, appeals as of right from his jury conviction in Muskegon County Probate Court on first-degree felony murder, MCL 750.316; MSA 28.548. Appellant was placed in the custody of the Department of Social Services. Appellant raises four issues on appeal. Finding no issue of merit, we affirm.

The victim was ninety-four years old and lived alone. His body was discovered on November 1, 1987, by a neighbor. The body was found sitting in a chair. The neighbor called the victim's stepson, Charles Stenberg. When Charles arrived, he observed that it was unusual for his father to be in that chair because it was difficult for him to get in and out of it.

The medical examiner, Claude VanAndel, saw no evidence of injury except for a small laceration on the victim's left hand. Because of the victim's advanced age and health problems, VanAndel determined that the cause of death was cardiac arrest. No autopsy was performed.

Shortly after the victim's body was removed from the home, Charles Stenberg discovered that the victim's wallet was missing. The victim usually kept large sums of money in his billfold. Charles and his brother Clyde also discovered the victim's watch and pellet rifle were missing. They made a police report.

The missing watch was gold with a gold band and had large numbers on its face. The parties stipulated that on November 7, 1987, appellant gave a watch to his girl friend who gave it to appellant's sister who then gave it to appellant's

aunt, who gave it to the police. The watch given to the police was identical to the victim's watch except it now had a leather band.

The victim often kept his doors unlocked. Appellant did odd jobs for the victim and would walk in and out of the victim's house.

On November 15, 1987, the sheriff received information from an anonymous source that an elderly gentlemen had been beaten to death in the general location of the victim's house. Following further investigation, the victim's body was exhumed on November 19, 1987. An autopsy showed multiple bruises about the body, multiple fractured ribs which caused extensive hemorrhaging in the chest area and a fractured neck. The medical examiner testified that death was either from extensive injuries to the chest area which interfered with the victim's cardiac functions or from the broken neck. The injuries were caused by the victim's being struck with considerable force by a smooth club or fist multiple times. Bruises on the arm were consistent with the victim's being held down.

Appellant was arrested and charged with first-degree felony murder.

I

Prior to trial, appellant filed a motion for specific performance of a plea agreement. Appellant claimed that, pursuant to plea negotiations, he was offered a dismissal of the felony-murder charge if he would plead guilty to second-degree murder. He alleged that negotiations were conducted to determine whether the prosecutor would be willing to further reduce the charge to unarmed robbery or manslaughter. Appellant was then advised that no further reduction would be

offered. Appellant claims that he accepted the offer of second-degree murder but requested that he be allowed to enter a nolo contendere plea. Following additional discussion, appellant's counsel was informed that no plea agreement would be reached.

A hearing was held on appellant's motion for specific performance of a plea agreement on May 2, 1988, where considerable testimony was produced concerning the discussions that had occurred pursuant to a possible plea agreement. The court held that it would not interfere with the operation of the prosecutor's office. The court found no injury to appellant because he gave up no substantial rights or privileges. The court denied appellant's motion.

Appellant claims that, when proceedings are held in a juvenile court, the prosecutor should be held to a higher standard of conduct. We disagree. Although juvenile proceedings are not criminal or adversarial in nature, MCL 712A.1; MSA 27.3178(598.1), JCR 1969, 1.3, the respective roles of the prosecutor and the court are functionally equivalent to adult criminal prosecutions. The juvenile court does not possess supervisory power over the prosecutor. The juvenile court may not, without the prosecutor's concurrence, accept a plea to a lesser included offense to the offense charged in the petition. *In the Matter of Sylvester Wilson,* 113 Mich App 113, 122-123; 317 NW2d 309 (1982), lv den 419 Mich 870 (1984).

A trial court acts improperly when it reinstates a plea bargain unless the prosecutor can be said to have abused his discretion by withdrawing from the plea agreement or prejudice to the appellant can be shown. *People v Heiler,* 79 Mich App 714, 719; 262 NW2d 890 (1977). Appellant claims that the prosecutor abused his discretion by offering a plea agreement to appellant and then, following

appellant's attempts to negotiate the plea, withdrawing his offer. We disagree.

A defendant's right under *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971), to have the prosecutor perform his promise in a plea bargaining agreement does not inure to a defendant until after he has pled guilty or performed part of the plea agreement to his prejudice in reliance upon the agreement. *Heiler,* p 719, n 4. *Santobello* and its progeny do not involve court-compelled performance of a tentative agreement from which the prosecutor has withdrawn prior to judicial approval. *Id.*

Appellant has made no showing that he performed any act in reliance upon the prosecutor's offer that might prejudice his defense. Appellant did not plead guilty or make any statement in reliance on a plea agreement. Our review of the record reveals no prosecutorial abuse of discretion. The evidence shows that the prosecutor's original offer was never accepted by appellant and, when that offer was withdrawn, the parties were still in the negotiations stage. No final plea agreement had been reached. Thus, we affirm the trial court's denial of appellant's motion for specific performance of the plea agreement.

II

Photographs of the victim's body were taken by a police detective before and during the autopsy. The prosecutor moved to admit some of these photographs and a hearing was held on this motion on May 2, 1988. The court held its decision in abeyance until trial. At trial, the court allowed six of the eleven photographs into evidence. The photographs admitted into evidence showed the victim's face with a bruise near the eye and upper

lip, a bruise on the victim's sternum, bruises on the victim's back, bruises on the victim's right arm, a bruise on the victim's shin, and bruises on the victim's left arm.

Appellant claims that the trial court abused its discretion in admitting these photographs taken twenty days after the victim's death and after the body had been embalmed and buried. Appellant argues that the prosecutor did not establish a proper foundation for the admission of the photographs because the pictures did not accurately represent the victim at the time of death and that their prejudicial effect outweighed their probative value. We disagree.

The admission or exclusion of evidence rests in the sound discretion of the trial judge, and the judge's exercise of discretion will not be overturned on appeal absent a showing of clear abuse of such discretion. *People v Myers,* 158 Mich App 1, 17; 404 NW2d 677 (1987). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence is generally admissible. MRE 402. Even if relevant, a trial court may choose to exclude evidence on the ground of unfair prejudice. MRE 403; *People v O'Brien,* 113 Mich App 183, 203; 317 NW2d 570 (1982), lv den 418 Mich 895 (1983); *People v Siler,* 171 Mich App 246, 252; 429 NW2d 865 (1988).

A proper foundation for the admission of photographs is made if someone who is familiar from personal observation of the scene or person photographed testifies that the photograph is an accurate representation of the scene or person. *People v Lobaito,* 133 Mich App 547, 560; 351 NW2d 233 (1984). Photographs are admissible despite changes

in the condition of the scene or person where a person testifies as to the extent of the changes. *Id.; People v Herrell,* 1 Mich App 666, 668; 137 NW2d 755 (1965).

The medical examiner, VanAndel, testified that the photographs did not represent what he saw when he examined the body at the time of death. However, the funeral director testified that as a body deteriorates, the embalming can cause a bruise to become more evident. The medical examiner who performed the autopsy, DeLeeuw, testified that the photographs were an accurate depiction of the body at that time. DeLeeuw stated that a body cannot be bruised after death because the heart is not pumping blood through the vessels. We conclude that a proper foundation was laid for the admission of the photographs.

The prosecutor offered the photographs to prove from the extent of the bruises that appellant had malice when he killed the victim. We conclude that these photographs were probative of malice and that their prejudicial effect did not outweigh their probative value. As the Court stated in *People v Eddington,* 387 Mich 551, 562-563; 198 NW2d 297 (1972):

> [I]f photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors. Generally, also, the fact that a photograph is more effective than an oral description, and to that extent calculated to excite passion and prejudice, does not render it inadmissible in evidence.

See also *People v Mackey,* 168 Mich App 154, 156; 423 NW2d 604 (1988). The trial court did not

abuse its discretion in admitting these photographs.

### III

Appellant claims that the trial court erred in not giving a specific-intent instruction after instructing the jury on first-degree felony murder and second-degree murder. We disagree.

First-degree felony murder does not require a specific intent to kill. *People v Johnson,* 93 Mich App 667, 670; 287 NW2d 311 (1979); *People v Anderson,* 147 Mich App 789, 793; 383 NW2d 186 (1985). First-degree felony murder requires a showing of malice. *People v Small,* 120 Mich App 442, 447; 327 NW2d 504 (1982). Malice is an essential element of any murder, whether the murder occurs in the course of a felony or otherwise. *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980). The intent to commit the underlying felony, standing alone, is not sufficient to establish the necessary mens rea for murder. *Id.* What is required in all first-degree murder prosecutions is that the trial court include within its instruction to the jury the element of malice as defined in *Aaron. People v Wilder,* 411 Mich 328, 340; 308 NW2d 112 (1981), reh den 411 Mich 1157 (1981). In *Aaron,* p 728, malice was described as the intention to kill, the intent to do great bodily harm or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm. Premeditation, deliberation and willfulness are not elements of first-degree felony murder. *Small, supra.*

Second-degree murder is not a specific-intent crime since it does not require intent to kill. Only wanton and willful disregard of the likelihood that the natural tendency of the person's behavior is to

cause death or great bodily harm must be shown. *People v Langworthy,* 416 Mich 630, 651; 331 NW2d 171 (1982); *People v England,* 164 Mich App 370, 375; 416 NW2d 425 (1987).

We have reviewed the jury instructions in their entirety to determine if error requiring reversal occurred. *People v Burgess,* 153 Mich App 715, 726; 396 NW2d 814 (1986), lv den 428 Mich 868 (1987). The trial court instructed the jury on first-degree felony murder and second-degree murder. The trial court then instructed the jury:

> You must find that the defendant possessed the following state of mind at the time of the killing. That the defendant intended to kill [the victim] or that the defendant intended to do great bodily harm to [the victim] or that the defendant intended to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result of his act.

We find this to be sufficient to fairly protect appellant's rights. *Id.*

IV

Appellant claims that the jury's verdict was against the great weight of the evidence. Appellant argues that only one witness implicated him in the murder and that witness was incredible. We disagree.

The question of whether a conviction is against the great weight of the evidence generally involves issues of credibility or circumstantial evidence. *People v McCumby,* 130 Mich App 710, 717; 344 NW2d 338 (1983), lv den 419 Mich 911 (1984). In reviewing this issue on appeal, the Court looks to whether there was an abuse of discretion in denying the motion for a new trial rather than resolv-

ing credibility issues anew. An abuse of discretion will be found only where the trial court's denial of the motion was manifestly against the clear weight of the evidence. *People v Calloway,* 169 Mich App 810, 826; 427 NW2d 194 (1988).

In addition to the witness who implicated appellant, evidence presented by other witnesses also linked appellant to the crime. He lived near the victim and often did odd jobs for him, such as raking leaves. Appellant knew the victim kept large sums of money in his wallet. Appellant had often been in and out of the victim's house and knew the victim kept his house unlocked. Appellant gave his girl friend a watch identical to the victim's watch, except for the watch band. A taped stick consistent with the type of weapon used to beat the victim was found in appellant's vehicle.

We find no abuse of discretion. It was for the jury to decide what weight it should assess to the testimony. Thus, there was no error.

Affirmed.